UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

S.C. JOHNSON & SON, INC.,

        Plaintiff,

        v.                                     Case No. 10-C-0681

TRANSPORT CORPORATION OF
AMERICA, INC.,
STEVENS TRANSPORT, INC.,
FAR SIDE TRUCKING, INC.
*c/o Illinois Corporation Service*,
GRAHAM KENT PHARR,

        Defendants.

---

DECISION AND ORDER GRANTING MOTIONS TO DISMISS (DOCS. 21, 23, 35)

        S.C. Johnson & Son, Inc. brought this action seeking to recover damages from defendants as a result of their involvement in an alleged bribery and kickback scheme. However, defendants Stevens Transport and Transport Corporation of America maintain that the complaint fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Graham Kent Pharr joins them.[1] Collectively, these defendants assert that plaintiff's claims are preempted by federal law under the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), now incorporated in the

---

[1] Pharr is a pro se litigant who failed to file a formal motion to dismiss. Instead, Pharr submitted a brief in which he requests dismissal and seeks to adopt defendant Stevens Transport's arguments as his own. (*See* Doc. 35.) Pro se litigants are held to a less stringent standard than their legally represented counterparts. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972); *Byers v. Basinger*, 610 F.3d 980, 986 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1052 (2011). As a result, the court will liberally construe defendant Pharr's brief as a motion to dismiss on the same bases as those enumerated in defendant Stevens Transport's dismissal motion.

Interstate Commerce Commission Termination Act of 1995. Alternatively, defendants contend that Count V is barred by the statute of limitations.[2]

When reviewing a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiff's favor." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). Here, plaintiff alleges that defendants gave plaintiff's employee, Milton Morris, "thousands of dollars or more in money, goods, travel, entertainment, and services." (Compl. ¶ 6.) In exchange, defendants received "favorable treatment" from Morris, which plaintiff alleges resulted in it paying defendants above-market rates, increased invoices, and for unnecessary services. In addition, defendants received more business from plaintiff. (*See, e.g.*, *id.* ¶¶ 6, 20, 51, 52, 54, 60, 70.) From 1988 through October 2004, Morris worked for plaintiff as director of its Transportation Department; his responsibilities included selecting carriers and obtaining competitive rates for transportation from those carriers. (*Id.* ¶ 18.)

By the fall of 2004, plaintiff discovered "a potential ongoing pattern of corruption and racketeering" by Morris and certain carriers.[3] (*Id.* ¶ 19.) In the spring of 2005, plaintiff found that defendants benefitted from their connections with Morris by receiving higher rates and charges as well as more business. (*Id.* ¶ 20.) Plaintiff alleges that defendants provided Morris with bribes under the guises of gambling, travel,

---

[2]Pursuant to the court's order dated August 4, 2011, default judgment as to liability was granted against Far Side Trucking, Inc. The court's use of the term "defendants" in this opinion refers to Stevens Transport, Inc.; Transport Corporation of America, Inc.; and Pharr.

[3] Plaintiff brought suit against Morris in the Circuit Court of Racine County, Wisconsin, on October 18, 2004; final judgment was entered against Morris and other named defendants on June 2, 2008, for $203.8 million. (Compl. ¶ 8.)

2

entertainment, and cash, and that defendants received favorable treatment for doing so. (*Id.* ¶¶ 22, 28, 35, 51.)

Plaintiff seeks damages on the basis of five state law claims: fraudulent misrepresentation by omission, civil conspiracy to violate Wis. Stat. § 134.05, civil conspiracy to commit fraud, violation of the Wisconsin Organized Crime Control Act ("WOCCA"), and aiding and abetting breach of fiduciary duty. Defendants responded to plaintiff's allegations with their motions to dismiss.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must state a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A plaintiff's claim needs to "allege enough facts to raise its right to relief above the speculative level," meaning that the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Sullivan v. CUNA Mut. Ins. Soc'y*, 683 F. Supp. 2d 918, 927 (W.D. Wis. 2010), *aff'd*, 649 F.3d 553 (7th Cir. 2011). The court accepts as true all well-pleaded, meaning non-conclusory, allegations. *Sullivan*, 683 F. Supp. 2d at 923.

Defendants argue that all of plaintiff's claims are preempted and should be dismissed. In preemption matters, the court presumes that "Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55, 115 S. Ct. 1671, 1676 (1995). "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case," *Wyeth v. Levine*, 555 U.S. 555, ___, 129 S. Ct. 1187, 1194 (2009) (internal quotations omitted), and preemption analysis begin

3

with the text of the statutory provision at issue, *N.Y. State Conference*, 514 U.S. at 655. Preemption may occur expressly, such as when a federal law states explicitly that it is preempting a state law; implicitly, such as when Congress enacts a law that is so pervasive that the court assumes preemption of state laws was intended; or by conflict, when a state and federal law are at odds. *See Frank Bros, Inc. v. Wis. Dep't of Transp.*, 409 F.3d 880, 885-87 (7th Cir. 2005).

Here, defendants contend that plaintiff's claims are preempted by the FAAAA, which expressly prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1) (2011). The language in the FAAAA is similar to that in the Airline Deregulation Act of 1978 ("ADA"). *Compare* 49 U.S.C. § 14501(c)(1) *with* 49 U.S.C. § 41713(b)(1). Consequently, courts have used interpretations of the ADA to assist them in interpreting the FAAAA. *See, e.g., Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370-71, 128 S. Ct. 989, 994-95 (2008).

In *Morales v. Trans World Airlines, Inc.*, the Supreme Court described the phrase "relating to" from the ADA as "express[ing] a broad pre-emptive purpose." 504 U.S. 374, 383, 112 S. Ct. 2031 (1992). Defining the phrase in accordance with a similar provision from the Employee Retirement Income Security Act of 1974 ("ERISA"), the Court stated that "relating to" means "having a connection with, or reference to . . . 'rates, routes, or services.'" *Id*. at 384 (quoting 49 U.S.C. App. § 1305(a)(1)). The state law need not expressly refer to rates, routes, or services to be preempted, but it must have a "*significant* impact on carrier rates, routes, or services," meaning that generally applicable laws can be preempted. *Rowe*, 552 U.S. at 375 (internal quotation marks deleted). However, "federal

4

law does not pre-empt state laws that affect rates, routes, or services in too tenuous, remote, or peripheral a manner." *Id*. (internal quotations omitted). Moreover, federal law does not necessarily preempt "court enforcement of contract terms set by the parties themselves." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222, 115 S. Ct. 817, 820 (1995). But, a party's claim may be preempted if he or she seeks to enlarge or enhance the original terms of the parties' bargain. *See id.* at 233.

The Seventh Circuit has set forth a two-part test that must be satisfied for a law to be preempted under the ADA or FAAAA: "(1) A state must enact or enforce a law that (2) relates to [motor carrier] rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996); *see also United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000). For purposes of FAAAA preemption, "[s]tate common law counts as an 'other provision having the force and effect of law'" and can therefore also be preempted. *Mesa Airlines*, 219 F.3d at 607. "States can impose their own substantive standards through the common law as well as through statutory enactments." *Travel All Over the World*, 73 F.3d at 1435. Services, for purposes of the ADA and FAAAA, are defined as "generally represent[ing] a bargained-for or anticipated provision of labor from one party to another . . . lead[ing] to a concern with the contractual arrangement between the [motor carrier] and the user of the service." *Id*. at 1433.

The question before the court is whether enforcement of the state laws underlying a claim asserted in the complaint in this case relates to plaintiff's prices, routes, or services by either expressly referring to them or having a significant economic effect

5

upon them. If the answer is yes, that claim or claims will be preempted and accordingly dismissed. Therefore, the court will address each of plaintiff's claims in turn.[4]

A.  Plaintiff's Claim of Fraudulent Misrepresentation by Omission is Preempted

Plaintiff's claim for fraudulent misrepresentation by omission is preempted. Plaintiff alleges that defendants failed to disclose their involvement in a "long-running scheme" which resulted in plaintiff paying increased rates and in addition, for unnecessary services, amounting to fraudulent misrepresentation by omission. (*See* Compl. ¶ 80.) This claim has its basis in tort law, and common law tort claims are not exempt from preemption. *See, e.g.*, *Mesa Airlines,* 219 F.3d at 610. Courts have dismissed claims sounding in fraud due to ADA or FAAAA preemption. *See, e.g., Wolens*, 513 U.S. at 228*; Mesa Airlines*, 219 F.3d at 611*.*

Defendants rely on the Supreme Court's decision in *Wolens* for part of their preemption argument. In *Wolens*, the Supreme Court held that Wolens's claims of American Airlines violating the Illinois Consumer Fraud Act were preempted. *Wolens*, 513 U.S. at 228. Wolens and other plaintiffs sued American Airlines for modifications to its frequent flier program, asserting that it devalued the program credits they had accrued. *Id*. at 224-25. The plaintiffs sought damages, alleging that the modification to the frequent flier program violated the Illinois Consumer Fraud Act. *Id*. However, the Court disagreed,

---

[4]Plaintiff's claims rest on various state statutory and common law theories of recovery. Though plaintiff may have been able to assert recovery in contract law, which the FAAAA is less likely to preempt, *see, e.g., Wolens*, 513 U.S. at 230, plaintiff expressly disclaims that it is seeking recovery under any theory of contract law (*see* Doc. 28 at 11 (stating that plaintiff "is not seeking to recover under any contract it had with Defendants; its allegations are not based on a breach of contract").)
  Defendants suggest that even if claims against motor carriers Stevens Transport and Transport Corporation of America may be preempted, the claims against Pharr, an individual, may not be because he cannot be sued under the FAAAA. Nothing in applicable FAAAA case law suggests that the availability of a viable claim under the FAAAA has any bearing on preemption analysis.

6

noting that the Act was "prescriptive" and when enforced "control[led] the primary conduct of those falling within its governance." *Id*. at 227. Further, the Court observed that the National Association of Attorneys General ("NAAG") had set forth guidelines showing that consumer protection acts, such as the Illinois Consumer Fraud Act, had the potential for "intrusive regulation of airline business practices." *Id*. at 227-28. These guidelines convinced the Court that the Illinois Consumer Fraud Act "serve[d] as a means to guide and police the marketing practices of the airlines," and that plaintiffs' claims should be dismissed. *Id*. at 228.

The Seventh Circuit has also dismissed fraud claims on the basis of ADA preemption. *See Mesa Airlines*, 219 F.3d at 607, 611. In *Mesa Airlines*, the court held that plaintiff's claim of fraudulent inducement was preempted by the ADA. *Id*. Mesa Airlines alleged that United Airlines fraudulently induced it to purchase planes and enter a contractual extension. *Id*. at 607. The court viewed Mesa Airlines' claim as an attempt to replace the parties' bargain with something else and held that the claim was preempted. *Id*. at 609-10.

Here, too, plaintiff's claim of fraudulent misrepresentation by omission is preempted. The genesis of the claim is fraud, similar to that asserted in *Wolens* and *Mesa Airlines*, and the facts underlying the claim are particularly similar to the facts of *Mesa Airlines*. Like Mesa Airlines, which alleged that it was fraudulently induced to purchase planes, plaintiff here contends that it was induced through fraud, bribery, and the kickback scheme to pay defendants more money for their services. Considering the situations in *Wolens* and *Mesa Airlines*, this court finds that enforcement of plaintiff's fraudulent misrepresentation claim would have a prescriptive effect, essentially regulating the

7

practices of defendant carriers (as in *Wolens*) or would result in replacement of the parties' original bargain with something else (as in *Mesa Airlines*). In either case, enforcement of plaintiff's claim would relate to defendant carriers' prices, routes, or services.

Plaintiff's argument against preemption is not persuasive. Plaintiff submits that payment of increased rates and for unnecessary services was merely a byproduct of the fraudulent conduct, but in matters subject to preemption that is not the court's focus. The standard set forth by the Seventh Circuit, which both parties acknowledge, is: "to be expressly preempted by the [FAAAA]: (1) A state must enact or enforce a law that (2) relates to [motor carrier] rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Travel All Over the World*, 73 F.3d at 1432.

The court notes instances where common law tort claims have been allowed to proceed. For instance, in *Travel All Over the World*, a travel agency sued an air carrier for defamation, slander, and fraud, among other things, stemming from an instance where the air carrier required the travel agency's clients to repurchase tickets directly from the air carrier. 73 F.3d at 1429. The Seventh Circuit allowed claims of defamation and slander to survive, finding that they did not have a significant economic effect on rates, routes, or services. *Id.* at 1433. Moreover, the court allowed certain other intentional tort claims (including fraud) to go forward, but only to the extent they were based on the defamatory comments. *Id.* at 1434. To the extent the intentional tort claims relied on the cancellation and repurchase of tickets the claims were preempted. *Id.* Tort claims "based on the airline's refusal to transport passengers who had booked their flights through Travel All . . . clearly 'relate to' the airline's provision of services." *Id.* Ultimately, any intentional tort

8

claims related to services were preempted but those based on defamatory comments were permitted to continue. *Id.* at 1435.

Here, fraudulent misrepresentation by omission is not based on another claim that would be allowed to survive. Plaintiff claims that defendants were engaged in a long-running scheme to obtain increased rates and business from plaintiff. (*See* Compl. ¶¶ 72-82.) The claim of fraudulent misrepresentation by omission relates to inflated, above-market prices that the defendants allegedly received and additional services provided as a result of the long-running scheme and thereby has a connection with defendants' prices and services. As such, plaintiff's claim of fraudulent misrepresentation by omission is preempted.[5]

B. Plaintiff's Claim of Civil Conspiracy to Violate Wis. Stat. § 134.05 is Preempted

Next, the court considers plaintiff's claim of civil conspiracy to violate Wis. Stat. § 134.05. Section 134.05 is a generally applicable bribery statute that does not apply to these defendants specifically in their capacity as motor carriers but to "[w]hoever corruptly gives, offers, or promises to an agent, employee, or servant any gift or gratuity whatever, with intent to influence the agent's, employee's or servant's action in relation to

---

[5] The court acknowledges that other courts have held intentional tort claims not preempted, using the underlying purpose of the preemptive provision at issue to come to such a conclusion. *See Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, 2007 U.S. Dist. LEXIS 19484 *27- *36 (D. Haw. March 19, 2007) (allowing a plaintiff's claim of fraud to go forward, reasoning that the underlying purpose of the ADA was to "promote competition among airlines" and that preempting plaintiff's fraud claim "would work to contravene [that] purpose"); *see also Taj Mahal Travel, Inc. v. Delta Airlines Inc.*, 164 F.3d 186, 195 (3rd Cir. 1998) (allowing a plaintiff's claim of defamation to go forward because applying state law to the claim did "not frustrate Congressional intent"). However, the court is bound by Seventh Circuit case law, which requires the court to focus on the text of the statute rather than its underlying purpose. *See Mesa Airlines*, 219 F.3d at 608-09, 611 (stating that "[o]pinions such as *Taj Mahal Travel*, which say that state law is preempted by [the ADA] only if it 'frustrates Congressional intent [or] imposes a state utility-like regulation on the airlines', cannot be reconciled with *Wolens*" and did not provide the court with a convincing reason to adopt that approach (citation omitted)).

9

the business of the agent's, employee's, or servant's principal, employer, or master." Wis. Stat. § 134.05(1). The statute does not expressly refer to prices, routes, or services.

When a generally applicable statute is at issue, the court must look to whether its effect on prices, routes, or services is "tenuous, remote, or peripheral" such that it should not be preempted, or whether enforcement of state law would have a "*significant* impact" on the prices, routes, or services. *Rowe*, 552 U.S. at 375 (internal quotation marks omitted). Categorization of a law as generally applicable does not mean it cannot be preempted. *See Wolens*, 513 U.S. at 227-28 (preempting the Illinois Consumer Fraud Act); *Morales*, 504 U.S. at 386. If the court is convinced that enforcement of the state law would have a significant economic effect on defendants' prices, routes, or services, it is preempted. *See Travel All Over the World*, 73 F.3d at 1432.

The Supreme Court's decision in *Morales* provides guidance. In *Morales*, states sought to enforce general consumer protection statutes to prevent airline fare advertisements that allegedly deceived consumers. 504 U.S. at 378. The NAAG adopted guidelines that explained how the existing general consumer protection laws would apply to airline advertising before informing the airlines that failure to comply with the guidelines could result in litigation. *Id*. at 379-80. In response, the airlines sued, claiming that such regulation was preempted by the ADA. *Id*. at 380. The Supreme Court held that state regulation of airline advertising was preempted under the ADA and found that the NAAG guidelines clearly referenced airfares. *Id*. at 388. The Court further found that allowing state restrictions on airline advertising would have a forbidden significant effect on fares due to the nature of advertising. *Id*. at 388. However, the Court was careful to point out that some laws would affect fares in "too tenuous, remote, or peripheral a manner" such

10

that they would not be preempted, though the Court did not provide further specificity. *Id.* at 390 (internal quotations omitted).

This court is persuaded that enforcement of § 134.05 in the present case has a significant relationship with defendants' prices, routes, or services. The complaint charges each defendant with forming a conspiracy with plaintiff's transportation director "through which they sought to cause SC Johnson to pay Stevens, TA, and Far Side rates substantially above those in the market and to cause SC Johnson to award them business." (Compl. ¶ 84.) The relationship between the claim and defendants' prices and services is not tenuous; instead, altering the price paid to and the amount of service from defendants was the very object of the conspiracy. Moreover, the overt acts on behalf of the charged conspiracy were defendants' payment of bribes "[i]n exchange for . . . rates that exceeded competitive levels and for reimbursement above costs incurred or charges that exceeded industry standards." (Compl. ¶ 85.)

Section 134.05 applies, among other things, to an employee who, being authorized "to employ service or labor for his or her principal, employer, or master," receives a commission or bonus from the person who renders such service, and to the person offering the commission or bonus. § 134.05(2)(b), (3). Thus, although this bribery statute may have general application, it covers bribes in exchange for services. Thus, the claim of civil conspiracy to commit such bribery relates to such services and servicers as well.

In sum, this claim is preempted.

11

C.  Plaintiff's Claim of Civil Conspiracy to Commit Fraud is Preempted

Plaintiff charges that defendants engaged in a civil conspiracy "through which they sought to cause SC Johnson to pay Stevens, TA, and Far Side rates substantially above those available in the market and to receive reimbursement for costs not actually incurred or charges that exceeded industry standards." (Compl. ¶ 90.)  State law claims that make express reference to price, routes, or services are preempted.  *See Morales*, 504 U.S. at 388 (preempting states' attempt at regulating airline fares in part because NAAG guidelines made "express reference[s] to fares"); *Travel All Over the World*, 73 F.3d at 1434 (stating that some claims of intentional torts expressly referred to and, therefore, related to an airline's services).

In its civil conspiracy claim, plaintiff asserts that defendants "formed a separate conspiracy with Morris through which they sought to cause SC Johnson to pay [defendants] *rates* substantially above those available in the market and to receive reimbursement for *costs* not actually incurred or charges that exceeded industry standards." (Compl. ¶ 90 (emphasis added).)  Unquestionably, these contentions relate to a price charged by defendants.  As such, plaintiff's claim for civil conspiracy to commit fraud is preempted.

D.  Plaintiff's Claim of Violation of the Wisconsin Organized Crime Control Act ("WOCCA") is Preempted

Next, the court turns to the claim that defendants violated WOCCA, Wis. Stat. §§ 946.80-.88.  WOCCA is similar to its federal counterpart, the Racketeer Influenced and Corrupt Organizations Act ("RICO"); the Wisconsin Court of Appeals has observed that case law interpreting RICO is persuasive authority when interpreting WOCCA.  *State v.*

12

*Mueller*, 201 Wis. 2d 121, 144, 549 N.W.2d 455, 464 (Ct. App. 1996). Due to these similarities, decisions interpreting RICO are instructive with regard to plaintiff's WOCCA claim.[6]

WOCCA, like many statutes, is generally applicable in that it does not apply to the defendants in their capacity as motor carriers but rather to any person who violates Wis. Stat. § 946.83. Wis. Stat. § 946.84(1). Section 946.83 prohibits, among other things, a person employed by an enterprise from conducting the enterprise through a pattern of racketeering activity. A pattern of racketeering activity means at least three incidents of activity involving various specified crimes including Wis. Stat. §§ 134.05 (bribery), 943.89 (mail fraud), and 943.90 (wire fraud). Wis. Stat. § 946.82(3), (4). As mentioned earlier, when a generally applicable statute is at issue, the court looks to whether the statute's effect on rates, routes, or services is tenuous, remote, or peripheral as opposed to having a significant impact on defendants' prices, routes, or services. *Rowe*, 552 U.S. at 375; *Travel All Over the World*, 73 F.3d at 1432.

Plaintiff asserts that it and its Transportation Department were each an "enterprise" as defined in the statute. (Compl. ¶ 96.) Plaintiff then asserts that defendants "were associated with the Transportation Department as carriers *providing transportation services* to SC Johnson." (*Id.* ¶ 99 (emphasis added).) Further, alleges plaintiff, defendants conducted and participated in the activities of the two enterprises by directing

---

[6] Federal courts have not dealt extensively with state law RICO or federal RICO claims in conjunction with the preemptive provision of the FAAAA or ADA. In *Taj Mahal Travel*, plaintiffs filed defamation and state RICO claims when the defendant airline did not honor tickets they had purchased. 164 F.3d at 188. The district court, relying on the preemption provisions of the ADA, had entered judgment against the plaintiff on a state RICO count as well as a defamation claim. *Id*. The plaintiff appealed the defamation claims, and the Third Circuit held that those claims were not preempted. *Id*. at 189, 195. The court did not address plaintiff's state RICO claim because the plaintiff did not challenge its dismissal. *Id*. at 188.

13

them "to pay above-market rates and for services that were not necessary through submission of numerous invoices to SC Johnson and to award Defendants business." (*Id.* ¶ 100.) Each bribe allegedly violated Wis. Stat. § 134.05 and, therefore, constituted racketeering activity. (*Id.* ¶ 102.) In addition, defendants submitted fraudulent invoices that violated the mail and wire fraud statutes of Wis. Stat. §§ 943.89 and 943.90 and constituted racketeering activity. (*Id.* ¶¶ 107, 108.) The bribes and the Transportation Department director's action in causing S.C. Johnson to pay defendants above-market rates and for services not performed and to award defendants increased shipping business were allegedly part of a common plan designed to injure S.C. Johnson. (*Id.* ¶ 104.)

These predicate acts substantially relate to the prices charged and services provided by defendants and the prices and services paid for by plaintiff. Hence, the WOCCA claim is preempted by the FAAAA.

E. Plaintiff's Claim of Aiding and Abetting Breach of Fiduciary Duty is Preempted and Time-Barred

In Wisconsin, "a person is liable in a civil action for aiding and abetting if: (1) The person undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) the person consciously desires or intends that his conduct will yield such assistance." *Winslow v. Brown*, 125 Wis. 2d 327, 336, 371 N.W.2d 417, 423 (Ct. App. 1985). To be preempted, enforcement of the law for aiding and abetting a breach of fiduciary duty must be found to relate to defendant's prices, routes, or services.

Though other courts have dealt with breach of fiduciary duty claims in the context of ADA or FAAAA preemption, few have dealt with claims of aiding and abetting a breach of fiduciary duty. Therefore, while a case like *Mesa Airlines*, in which a plaintiff's

14

claim that defendant violated fiduciary duties that it owed plaintiff as its partner, is helpful, it is not identical. *See Mesa Airlines*, 219 F.3d at 607, 611.

Nevertheless, the claim at issue refers to defendants' pricing and services, meaning that enforcement of the law would relate to the defendants' pricing and services as well. The complaint asserts that defendants "assisted Morris in his breach of fiduciary duty by providing Morris with bribes and kickbacks in exchange for receipt of inflated rates and for receipt of business" and that they "intended that their provision of bribes and kickbacks would cause Morris to have SC Johnson pay inflated rates and provide them with business." (*See* Compl. ¶¶ 123, 125.) Consequently, defendants' pricing is an essential feature of a breach of fiduciary duty claim, as Morris's job required him to obtain competitive transportation rates from carriers. (*See* Compl. ¶¶ 18, 123, 125.) Aiding and abetting the same claim would similarly relate to defendants' pricing. That being so, the claim is preempted by the FAAAA.

Moreover, this claim is time-barred by a two-year statute of limitations for intentional torts, Wis. Stat. § 893.57.[7] Plaintiff contends that its claim is grounded in fraud so a six-year statute of limitations applies, but the court disagrees.

Wisconsin courts have characterized aiding and abetting as an intentional tort. *See Tensfeldt v. Haberman*, 2009 WI 77, 319 Wis. 2d 329, 768 N.W.2d 641 (2009). As discussed above, "a person is liable [in Wisconsin] in a civil action for aiding and abetting if: (1) The person undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) the person consciously desires or

---

[7] As Stevens Transport notes in its reply brief, at the time of the alleged aiding and abetting, the statute of limitations now at issue was two years; the statute has since been amended to have a time limit of three years. 2009 Wis. Laws 120.

15

intends that his conduct will yield such assistance." *Winslow*, 371 N.W.2d at 423. Breach of fiduciary duty is also classified as an intentional tort for the purpose of applying the statute of limitations. *See Beloit Liquidating Trust v. Grade*, 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298 (stating that a claim of breach of fiduciary duty involves an intentional tort and that Wis. Stat. § 893.57 applies). It appears that in applying the statute of limitations to relevant claims, courts do not (as plaintiff desires) consider the underlying facts of the claim. *See, e.g., Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, 291 Wis. 2d 426, 718 N.W.2d 51 (holding that a breach of fiduciary duty is an intentional tort and applying Wis. Stat. § 893.57 without inquiry into the underlying facts of the breach of fiduciary duty claim); *McMahon v. Pa. Life Ins. Co.*, 891 F.2d 1251, 1255 (7th Cir. 1989) (stating that "[e]ven if it mattered" that certain underlying facts were present, plaintiff's "breach of fiduciary duty claim was properly ruled barred by Wisconsin's two-year statute of limitations"). These decisions indicate that a claim of aiding and abetting is simply an intentional tort with a two-year statute of limitations.

Though plaintiff provides case law to support its argument, none of it comes from the Seventh Circuit, which this court is bound to follow, nor from Wisconsin courts. The court need not look any further than relevant Wisconsin case law and Seventh Circuit decisions interpreting Wisconsin law for the applicable limitations period. Section 893.57's two-year statute of limitations applies. Given that plaintiff discovered (or should have discovered) defendants' aiding and abetting by fall 2004 (at the earliest) or spring 2005 (at the latest) but did not bring suit until August 10, 2010 (five years after discovery), plaintiff's claim of aiding and abetting breach of fiduciary duty is time barred by Wis. Stat. § 893.57's two-year statute of limitations.

16

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that Stevens Transport's, Transport Corporation of America's, and Pharr's motions to dismiss pursuant to Rule 12(b)(6) (Docs. 21, 23, 35) are granted, and all claims against these defendants are dismissed.

IT IS FURTHER ORDERED that S.C. Johnson notify the court in writing within fourteen days as to whether it intends to establish damages against Far Side Trucking by affidavit or if, instead, a hearing as to damages is desired.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE